# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2425

_____

EMCASCO Insurance Company; Employers Mutual Casualty Company

*Plaintiffs - Appellants*

v.

Barry Walker; All Pro Contracting, Inc.; Bear Lake Property Investments, LLC; Lori Cogburn; Brandy Cox; Bryce G. Walker; Jaydin Cotter; Lissette Neomi Ramos Cortez; Taylor Bowen Squires; Kenny Taylor, as Next Friend of C.T., a Minor; Kaila Deatherage, as Next Friend of K.M.B., a Minor; Harold Cates, as next of friend of R.C. and H.T., a minor; Allyson Coster; Kate Lynn Owens; Scott Withers; Heather Graves, as next of friend of M.A., a minor; Jana Bradford; Joyce Perser

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: January 9, 2024
Filed: July 15, 2024

_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

EMCASCO Insurance Company and Employers Mutual Casualty Company (together, EMC) appeal from the district court's[1] dismissal of their declaratory judgment action and denial of their motion for reconsideration. We affirm.

## I.

After Barry Walker pleaded guilty to sex crimes against children, several of his victims filed a tort action against him and others in Arkansas state court. EMC insured Walker during periods of his depravity, so it sued the victims, Walker, and the other state tort defendants in federal court, seeking a declaration that it does not have a duty to defend or indemnify Walker. Less than three months later, the victims filed their own declaratory judgment case against EMC, Walker, and the other tort defendants in Arkansas state court, except that they sought a declaration that EMC *does* have a duty to defend and indemnify Walker.

With a dueling action in hand, the victims moved to dismiss EMC's first-filed federal complaint. The district court noted that it had "broad discretion to decline to exercise jurisdiction" given the parallel state court action and dismissed the case. It also denied EMC's motion for reconsideration, reasoning that there was no "compelling reason to reverse its discretionary decision" despite EMC's strident claims that the state court judge was biased.

## II.

Under the Declaratory Judgment Act, a district court "*may* declare the rights and other legal relations of any interested party seeking" a declaration. 28 U.S.C. § 2201(a) (emphasis added). This "textual commitment to discretion" spares the court from its otherwise "'virtually unflagging obligation' to exercise the jurisdiction conferred on [it] by Congress." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284, 286

---

[1]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

(1995) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942) (observing that a district court is "under no compulsion to exercise" jurisdiction under the Declaratory Judgment Act).

The scope of a district court's discretion to dismiss a declaratory judgment action—known as *Wilton/Brillhart* abstention—depends on the particular facts of a case. We start with the "threshold determination" of whether there are parallel state and federal declaratory judgment actions. *See Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013). There is no dispute here that the same parties are litigating the same issues in both forums, so the actions are parallel. *See Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005). This means that the district court "has much broader discretion in determining whether to exercise jurisdiction," and we have much narrower reason to find abuse of that discretion. *See id.* at 996 (citing *Wilton*, 515 U.S. at 282–90).

Of course, "we do not mean that the district court may do whatever pleases it." *Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc.*, 295 F.3d 870, 872–73 (8th Cir. 2002) (citation omitted). It instead "should determine if the question[s] in controversy would be *better settled* in the proceedings in the state court." *Cincinnati Indem. Co. v. A & K Constr. Co.*, 542 F.3d 623, 625 (8th Cir. 2008) (emphasis added). Beyond whether the actions are parallel, this analysis includes whether the "issues [are] governed by federal law," "whether all claims can be decided in state court, and whether all parties are joined and amenable to process there." *Id.* The court should also consider judicial economy and weigh what may be practical, all while keeping "attention to avoiding gratuitous interference with state proceedings." *See Lexington*, 721 F.3d at 967 (cleaned up) (quoting *Brillhart*, 316 U.S. at 495).

The district court found that the state and federal actions are parallel and that Arkansas law governs this case. It then weighed considerations of judicial economy and practicality, observing that the same judge is overseeing both the state tort and declaratory judgment actions and that the federal action "ha[d] only been pending

for a few months and ha[d] not approached the dispositive stage." It also reckoned that abstention "avoid[ed] the potential of having the parallel proceedings continue for an extended period before one proceeding reache[d] a resolution and functionally nullifie[d] the time spent on the other through res judicata." We have concluded under less compelling circumstances that the questions in controversy "w[ould] be better settled in" a state court action and accordingly abstained, *see Cincinnati Indem.*, 542 F.3d at 625 (concluding that the "district court erred by not abstaining" where the actions were parallel, state law controlled, all parties were joined in state court, and the proceedings there were adequate to resolve the issues), so we have no issue with the district court doing so here.

EMC objects, arguing that district courts may abstain only after finding that some *legal* issue is "better settled" in state court. *See Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 875 (8th Cir. 2000). But *Haverfield* simply cautioned against *exercising* jurisdiction in cases where it may be "prudent to allow the state courts to resolve their own split of authority rather than having a federal district court issue a nonprecedential interpretation of the issue." *Lexington*, 721 F.3d at 972–73 (citing *Haverfield*, 218 F.3d at 875); *see also GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 725 (8th Cir. 2019) (distinguishing *Haverfield* and affirming exercise of jurisdiction). It did not disturb the "unique breadth of [a district court's] discretion to decline to enter a declaratory judgment." *Cf. Wilton*, 515 U.S. at 283, 287 (cautioning that where parallel proceedings raising the same state law issues exist, without more, "a district court might be indulging in 'gratuitous interference'" if it exercises jurisdiction (cleaned up) (citation omitted)).

This case is in the heartland of the *Wilton*/*Brillhart* abstention doctrine because it involves a parallel state court proceeding and exclusively state law issues. *See Wilton*, 515 U.S. at 280; *Brillhart*, 316 U.S. at 492–93. The district court did not abuse its "unique and substantial discretion," *Wilton*, 515 U.S. at 286, by deciding that "it would be uneconomical as well as vexatious for [it] to proceed in [EMC's] declaratory judgment suit," *Brillhart*, 316 U.S. at 495.

III.

EMC also appeals from the district court's denial of its Federal Rule of Civil Procedure 60(b) motion for reconsideration, which we review for clear abuse of discretion. *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 842–43 (8th Cir. 2022). EMC argued that the state court judge was required to recuse under the Arkansas Code of Judicial Conduct and that he had and would continue to issue unfair rulings against EMC.

EMC continues to attack the state court judge and the Arkansas courts in general and urges us to find that the district court had to reverse course and keep the case. We have no reason to believe that these arguments have any merit, but at the very least, we cannot say the district court clearly abused its discretion by denying the motion for reconsideration. Noting that the "potential bias of the state court judge was not a dispositive factor in [its] order of dismissal," the district court observed that EMC's concerns could "be adequately handled by state court processes."[2] We agree.

IV.

Invoking the words of Chief Justice John Marshall, EMC insists that our decision today will undermine "the right of incorporated aliens, or citizens of a different state from the defendant, to sue in the national courts." *Bank of U.S. v. Deveaux*, 9 U.S. (5 Cranch) 61, 88 (1809). We don't think so; we simply follow the

---

[2]And that's exactly what happened. Before EMC filed its brief in this appeal, the state court judge recused from both the tort and declaratory judgment cases, and the Arkansas Supreme Court appointed a new judge. EMC insists that we must close our eyes to these facts since they occurred after the district court entered judgment. *But see State Farm Mut. Auto Ins. Co. v. Griffin*, 240 F. App'x 734, 735 (8th Cir. 2007) (per curiam) (observing how "subsequent events [] proved that" the party's arguments on appeal had "[no] merit"). Assuming without deciding that dubious contention is true, we affirm the district court's decision without relying on later facts that proved it to be entirely correct.

-5-

text of the Declaratory Judgment Act. *Cf. Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam) ("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

We affirm the district court's judgment.

———————————————